IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Migo Trading, LLC, a Nevada limited liability company, | |
| Plaintiff, | CASE NO.: |
| vs. | **COMPLAINT** |
| Meir Zohar, an individual dba JTM Global; JTM BioEco LLC, an Illinois limited liability company, | **JURY DEMAND** |
| Defendants. | |

**COMPLAINT**

For its Complaint against defendants Meir Zohar, an individual dba as JTM Global ("Zohar"), and JTM BioEco LLC ("JTM Bio"), Plaintiff Migo Trading, LLC ("Plaintiff" or "Migo") states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Nevada with its members being citizens of the state of New Jersey and the state of California. Therefore, Plaintiff is a citizen of state of New Jersey and the state of California.

2. Plaintiff operates as an importer/exporter of certain goods including but not limited to personal protective equipment (PPE) and COVID testing kits.

3. Upon information and belief, at all relevant times hereto Defendant Zohar is a resident of Miami, Florida.

4. Upon information and belief, at all relevant times hereto Zohar conducted business as "JTM Global" and at all times held himself out to Plaintiff as acting on behalf of JTM Global and JTM Bio. On JTM Global's website, it provides an address for its headquarters at Paseo de la

1

Castellana, 141, 5th floor, 28046, Madrid, Spain; however, upon information and belief, there is no JTM Global conducting business at that address.  Also according to its website at https://www.jtm-global.com/about, JTM Global and/or JTM Global, LLC supplies products and services in various industries throughout the world, including consumer goods, mining goods and petroleum products.

5. Upon information and belief, JTM Bio is a limited liability company organized and existing under the laws of the State of Illinois, at all times relevant hereto, conducting business in the state of Florida, with its members being citizens of the state of Illinois and the state of Florida. Therefore, JTM Bio is a citizen of the state of Illinois and the state of Florida.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), as there is diversity of citizenship between Plaintiff and Defendant.  In addition, the amount in controversy, exclusive of interest and costs, exceeds the sum of seventy-five thousand dollars ($75,000.00).

7. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because Defendant has its principal place of business in this district and because a substantial part of the events giving rise to the claims occurred in this district.

8. This Court has personal jurisdiction over Zohar because he is a resident of the state of Florida, has a driver's license issued by the state of Florida and regularly conducts business in the state of Florida.

9. This Court has personal jurisdiction over JTM Bio because this Court has personal jurisdiction over Zohar, who is the alter ego of JTM Bio, as set forth below.

## ALLEGATIONS COMMON TO ALL CLAIMS

### Alter Ego

10. On May 6, 2020, "JTM Global LLC" was formed as a limited liability company through the Florida Division of Corporations, naming Zohar as CEO, with an address located in Hollywood, Florida.

11. On June 19, 2020, JTM Global LLC was dissolved as an entity due to "negligent accounting practices, mismanagement, succession planning failure, disagreements, distrust between members." A true and correct copy of the Articles of Dissolution is attached hereto as Exhibit A.

12. At all relevant times hereto, Zohar held himself out to Migo as conducting business on behalf of JTM Global, despite that JTM Global LLC is a dissolved entity and despite that, upon information and belief, there is no legal entity called JTM Global registered anywhere in the United States or any other country.

13. Upon information and belief, Zohar improperly utilized JTM Bio as a corporate subterfuge to evade creditors, perpetrate fraud and, upon information and belief, utilized JTM Bio as a mere instrumentality for the transaction of his own affairs. Further, Zohar used JTM Bio and/or JTM Global as alter egos for these same purposes.

14. Upon information and belief, Zohar, JTM Global and/or JTM Bio failed to maintain formal legal separation among them, such that each is the alter ego of the other.

15. To accomplish the fraud described in this Complaint, Zohar, JTM Global and/or JTM Bio have operated a de facto enterprise, working as if they were one business with common ownership, common management, common assets and common personnel and with rapid and improper movement of funds from one party to the other.

16. The corporate veil of Bio Eco should be pierced and its corporate form disregarded by virtue of actions taken by Defendants to render them a mere alter ego of Zohar and by virtue of the fact that Zohar has used and is using the corporate form of JTM Bio to accomplish unjust and fraudulent results.

17. In light of the foregoing, Defendants should be held jointly and severally for all damages incurred by Plaintiff as a result of any actions and/or omissions by JTM Bio.

**The Transaction**

18. In January 2022, Migo sought an introduction to a supplier of COVID-19 home testing kits that it intended to distribute in North America.

19. On or about January 18, 2022, Migo received an introduction to Zohar, who told the President of Migo, Michael Gothelf ("Gothelf"), "I can get you as many as you need constantly."

20. Also on January 18, Gothelf requested that Zohar issue a purchase order for 300,000 units, which Zohar agreed to do. Gothelf asked Zohar to "send me the address," and in response, Zohar provided JTM Global's address in Spain. Gothelf asked if JTM Global was a United States company, to which Zohar responded, "we have a US branch in USA JTM BioEco."

21. On January 19, 2022, JTM Global sent an invoice to Migo. The invoice, a true and correct copy of which is attached hereto as Exhibit A, includes JTM Bio's name, address and information. According to Zohar, "as requested the payment is through our company in USA," however, the payment amounts were designated in Euros.

22. Thus, on January 19, 2022, the parties entered into an agreement in which Zohar and/or JTM Bio were required to supply 300,000 Roche COVID-19 AG Self-Test boxes (the "Product") to Migo at a unit price of €3.50, for a total price of €1,050,000.00.

23. According to the parties' agreement and as set forth in the invoice, Migo was to pay a 25% deposit to JTM Bio, and "the seller" was required to make the goods available for pickup from Defendants' warehouse in Vienna, Austria on January 24, 2022.

24. In connection with its obligations under the parties' agreement, on January 19, 2022, Migo sent $297,000.00 via wire transfer to JTM Bio's bank account. That same date, Zohar confirmed receipt of the deposit.

25. Also on January 19, Zohar confirmed that "you are getting 300,000" units of the Product. On January 20, Zohar confirmed that the shipment of 300,000 units would be ready for pickup in Wien, Austria on Monday, January 24.

26. On January 20, 2022, Gothelf requested that Zohar provide photographs of the product as proof of its existence. On the same day, Zohar informed Gothelf that he would receive proof soon. Zohar, despite repeatedly representing that the goods were in a warehouse in Wien, Austria, never provided the requested images or any other type of proof of the existence of the goods to Migo or any of its agents or representatives.

27. On January 24, Zohar contacted Gothelf and stated that in order for the goods to be provided to Migo by that day, the unit price needed to be increased from €3.50 to €4.50, for a total price of €1,350,000.00, to which Gothelf reluctantly agreed because Migo needed the products and had no choice but to acquiesce.

28. On the same day, after the parties agreed to the increased unit price, Zohar later informed Migo that the goods were not available for pickup as promised, telling Gothelf that he would call shortly. Zohar, however, refused to communicate further with Migo or respond to any messages from Gothelf.

29. Accordingly, Migo demanded return of the $297,000.00 deposit. On January 28,

Zohar agreed to refund the deposit, telling Gothelf the funds would be in Migo's account on January 31, 2022. Then, on January 31, Zohar told Gothelf "in 1 hour you will receive the wire confirmation." This was false. Despite Zohar's misrepresentations to the contrary, he did not send a wire payment and never returned the $297,000.00 deposit to Migo.

30. As a result of Defendants' failure and refusal to supply the ordered product to Migo in accordance with the parties' agreement, Migo's business sustained substantial damages and harm as its ability to deliver product to its end-customers was significantly delayed.

**FIRST CLAIM FOR RELIEF**

Breach of Contract
(Against All Defendants)

31. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs of this Complaint as though fully set forth herein.

32. On or about January 19, 2022, Plaintiff entered into a contract with Defendants for purchase of the Product, as set forth above.

33. Defendants materially breached the contract by failing and refusing to supply the Product and then failing and refusing to refund the deposit upon its inability and/or unwillingness to perform.

34. In accordance with the parties' contract, Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the agreement except for those conditions, covenants and promises that have been excused by Defendants' breach of contract.

35. By reason of the foregoing breach of contract, and as a direct and proximate result thereof, Plaintiff has suffered damages consisting of at least $1,000,000.00, including the $297,000.00 deposit, consequential damages, including but not limited to lost profits and out-of-pocket expenses, in an amount to be determined at trial, as well as interest accrued thereon, attorneys' fees and costs.

## **SECOND CLAIM FOR RELIEF**

Fraud
(Against All Defendants)

36.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 30 of this Complaint as though fully set forth herein.

37.     On or about January 18 through approximately February 5, 2022, Zohar misrepresented to Plaintiff, on behalf of himself individually and on behalf of JTM Bio, that he had the Product available to sell to Migo and that it would be available for pickup at a warehouse in Austria.  As such, Defendants fraudulently induced Plaintiff to enter into the purchase transaction and to transfer the $297,000.00 deposit to them.

38.     In addition to the foregoing misrepresentation, Zohar also misrepresented, on behalf of himself individually and on behalf of JTM Bio, that Defendants would refund the deposit to Plaintiff when they were unable to supply the Product to Plaintiff.

39.     When Zohar made the foregoing misrepresentations, he knew, or should have known, them to be false and made them with the intent to deceive and defraud Plaintiff and to induce Plaintiff to act in reliance upon those representations.  In particular, at the time Zohar told Plaintiff that he would be able to supply the Product and then return the deposit, Defendants had no intention of doing so.  Such misrepresentations were material to Plaintiff's decision to enter into the agreement with Defendants, as well as to send the $297,000.00 deposit to Defendants.

40.     Plaintiff, at the time the representations were made by Defendants, and at the time Plaintiff entered into the agreement and sent the deposit to Defendants, was ignorant of the falsity of the misrepresentations.  In justified reliance on these representations, Plaintiff was induced to enter into the agreement and to send the deposit to Defendants.

41.     As a direct and proximate result of Defendants' fraudulent conduct as herein alleged, Plaintiff has been damaged in an amount to be determined at trial.

42.     Alternatively, based on Defendants' fraudulent conduct, as set forth hereinabove, Plaintiff seeks rescission of the agreement and to place the parties in the positions they held prior

to execution of agreement, including return of the deposit to Plaintiff.

43. Defendants' acts were done with conscious disregard of Plaintiff's rights, and with the intent to vex, injure, and annoy Plaintiff. Further, the acts were done so as to constitute oppression, fraud, and/or malice, such as to evidence an evil hand guided by an evil mind, so as to justify punitive and exemplary damages sufficient to punish Defendants and to dissuade them from similar actions in the future.

### THIRD CLAIM FOR RELIEF

Unjust Enrichment
(Against All Defendants)

44. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 30 of this Complaint as though fully set forth herein.

45. Plaintiff sent the sum of $297,000.00 to Defendants, as set forth above. Defendants retained the monies, thus obtaining a benefit from them, however, they have failed and refused to return the funds to Plaintiff, even though Defendants refused to supply the Product to Plaintiff.

46. As a direct and proximate result thereof, Defendants have been unjustly enriched, to Plaintiff's detriment.

47. Further, as a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages in the amount of at least $1,000,000.00, including the $297,000.00 deposit, consequential damages, including but not limited to lost profits and out-of-pocket expenses, in an amount to be determined at trial, as well as interest accrued thereon, attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered in its favor and against Defendants, jointly and severally, as follows:

A. General and compensatory damages in an amount to be proven at trial, at least in the amount of $1,000,000.00;

B.  Rescission of the purchase agreement;

C.  Punitive damages in an amount to be proven at trial; and/or

D.  For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a jury trial on all appropriate issues pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED:  March 4, 2022

**RESPECTFULLY SUBMITTED:**

/s/ Lawren A. Zann
Lawren A. Zann
**GREENSPOON MARDER LLP**
200 E. Broward Blvd., Ste. 1800
Fort Lauderdale, FL 33301
Telephone: (954) 333-4345
Email:  lawren.zann@gmlaw.com
Sharon A. Urias (*Pro Hac Vice anticipated*)
**GREENSPOON MARDER LLP**
8585 E. Hartford Drive, Ste. 700
Scottsdale, AZ  85255
Telephone:  480.306.5458
Email:  sharon.urias@gmlaw.com

49425866v1